**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Criminal No. 1:10-cr-00179** |
| **v.** | : | |
| | : | **(Chief Judge Kane)** |
| **CHARLES HERMAN STATEN,** | : | |
| Defendant | : | |

**MEMORANDUM ORDER**

I.    **BACKGROUND**

On June 9, 2010, a grand jury for the Middle District of Pennsylvania issued an indictment against Defendant Staten.  (Doc. No. 1.)  A superseding indictment was issued on January 19, 2011, charging Defendant Staten with distribution and possession with the intent to distribute crack cocaine and conspiracy to distribute and possess with the intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846(a), respectively.  (Doc. No. 28.)  Trial in this matter has been continued sixteen times.  (Doc. Nos. 18, 21, 23, 27, 52, 75, 103, 112, 120, 124, 126, 151, 155, 157, 165, 192.)  Further, since the issuance of the original indictment, four attorneys have been appointed to represent Defendant Staten, three of whom have withdrawn due to Defendant Staten's refusal to cooperate with them.[1]  (See Doc. No. 22 ¶ 4 ("Undersigned counsel received a letter from the Defendant . . . indicating that he no longer felt counsel had his best interest at heart."); Doc. No. 78 ¶ 6 ("The undersigned counsel can no longer represent Mr. Staten due to his extraordinary hostile attitude toward defense counsel.");

---

[1] Attorney Terrence J. McGowan, the third attorney appointed to represent Defendant Staten, filed a motion to withdraw as counsel less than one week after he was appointed, solely on the basis that he was "too busy to devote the time and attention to the above-captioned case that this particular Defendant requires."  (Doc. No. 108 ¶ 3.)

1

Doc. No. 176 ¶ 6 ("Defendant's refusal to speak with undersigned makes it impossible to provide effective representation on the scheduled trial date.").)

In January 2012, Defendant Staten began filing letters with the Court, many of which contain disparaging remarks about the undersigned and counsel as well as various requests for relief. (Doc. Nos. 161, 175, 202, 223, 224, 226, 227.) A recurrent theme in these letters is Defendant Staten's extreme dissatisfaction with the representation of his most recent counsel, Attorney Steve Rice, and his desire to proceed pro se at trial. Accordingly, the Court held hearings on February 3, 2012, March 2, 2012, and June 14, 2012, addressing this issue.

During the February 3, 2012 hearing, Defendant Staten initially expressed a desire to represent himself. The undersigned then began to conduct an on-the-record colloquy with Defendant Staten, in accordance with Faretta v. California, 422 U.S. 806 (1975), and United States v. Peppers, 302 F.3d 120 (3d Cir. 2002), to ensure that Defendant Staten's waiver of the right to counsel was knowing, voluntary, and intelligent. After completing nearly the entire colloquy, Defendant Staten elected to retain Attorney Rice as counsel. Approximately three weeks later, Attorney Rice filed a motion to continue trial, indicating that Defendant Staten refused to see or speak with him to assist in preparation for trial. (Doc. No. 176.) Accordingly, the Court held a hearing on March 2, 2012, to address this issue. At the hearing, Defendant Staten expressed dissatisfaction with Attorney Rice's representation, and the undersigned found that he had "reached a point of being unable to work with [Attorney Rice]." (Doc. No. 222 at 7.) The Court deferred making a final determination regarding Defendant Staten's counsel pending review of a competency evaluation. (Doc. No. 192.) Upon review of the evaluation, which reflected that Defendant Staten is competent to stand trial, the Court held a hearing on June 14,

2012, during which Defendant Staten was highly agitated, disrespectful, and unwilling to engage in any meaningful discussion with the Court.  Defendant Staten, however, made clear at the hearing that he wishes to proceed pro se at trial.  Despite the undersigned's attempts to again inform Defendant Staten of the consequences of waiving his right to counsel, in accordance with Faretta and Peppers, Defendant Staten spoke over the undersigned, refused to listen to the undersigned, and demanded to be excused.  Accordingly, the Court concluded the hearing and granted Attorney Rice leave to withdraw as counsel for Defendant Staten, a decision made in light of both Defendant Staten's repeated requests to proceed pro se[2] as well as the disparaging remarks Defendant Staten made about Attorney Rice in a May 22, 2012 letter.[3]

In light of Defendant Staten's continued refusal to cooperate with Attorney Rice or engage in a meaningful discussion with the undersigned regarding Attorney Rice's representation, as well as the baseless requests Defendant Staten has made in his letters and at the hearings, the Court finds it necessary at this juncture to address two issues.  First, the Court will address the requests and statements that Defendant Staten has repeatedly raised in filings

---

[2] See Doc. No. 223 at 1-2 ("I want to assume the position as pro-se counselor" and "I wish to go pro-se at any of my upcoming hears"); Doc. No. 224 at 2 ("Now that I am considered as pro-se counsel by the courts . . . ."); Doc. No. 226 at 7 ("The judge may consider [Attorney Rice] as my counsel, but I don't . . . and I never will.  At all other court proceedings, [Attorney Rice] wont be representing me, as long as I have a right to represent myself.").

[3] See Doc. No. 226 at 3 ("I really do dislike you sir, due to the fact of what you represent, my dislike for you is so intense that I can truly say that I hate you . . . ."); id. at 6 ("You conspired with the prosecutor's shenanigans to fraud me and the courts.  As soon as I have another conference with my civil lawyer we will contrive a very prosperious tactic to sue you, stop your bond company's protection for you, create a strategy that will put you in a predicament of becoming liened . . . ."); id. ("Sir, you wake up everyday and have the audacity to call yourself a defense attorney, yet on the contrary, you're the epitome of a crook, conspiring with the probate and the declarant to commit all kinds of crimes consisting of forgery, treachery, treason, racketeering, misappropriation of funds, and being tax fugitives.") (errors in original).

with the Court.  Second, the Court will address, once again, the consequences of Defendant

Staten's decision to proceed <u>pro</u> <u>se</u> at trial.

## II.     DEFENDANT STATEN'S REQUESTS FOR RELIEF

Defendant Staten is currently incarcerated at the Adams County Adult Correctional

Complex in Gettysburg, Pennsylvania.  Since January 2012, he, and defendants in two other

criminal actions before the Court, have sent letters to the Court containing bizarre requests that

are not grounded in proper legal authority.  Defendant Staten has objected to a number of issues

and has made a number of confounding claims, including that this Court is simultaneously a civil

court, commercial court, and admiralty court.  Defendant Staten's own words at the March 2,

2012 hearing perhaps best reflect the relief to which he believes he is entitled:

> Your Honor, every charge has a penal sum linked to it.  As a citizen,
> I must be given a way out, according to Rule 8, affirmative defense.
> Now, that actually comes from the civil court.  And since I'm being
> sued, I'm being sued by the Government for violating the straw man
> contract for transgressing against the law.  I'm being sued – the State
> put out a bid bond, the U.S. Government purchased that bid bond and
> brought me into this jurisdiction.
>
> And, by the way, I would like to ask, before we go on, could you
> please inform me of my – of the whereabouts of my Miller Act
> bonds, Miller Act Bond 273, 274, and 275? I know that, since you're
> probating my estate, that you know where these bonds are.  Could
> you inform me on where they're located?

(Doc. No. 222 at 5-6.)  At this hearing, Defendant Staten went on to accuse the undersigned of

fraud and treason, citing, <u>inter</u> <u>alia</u>, the Uniform Commercial Code.  (<u>Id.</u>)  The gist of Defendant

Staten's requests appear to be that he be allowed to pay a penal sum to "remedy" his legal

transgressions.  Defendant Staten has made similar requests in his various letters to the Court,

which also indicate that Attorney Rice's refusal to comply with Defendant Staten's misguided

legal strategies has led to a breakdown of the attorney-client relationship.  (See Doc. Nos. 161,

175, 202, 223, 224.)

     The Court recently addressed similar requests for relief in United States v. Bishop, 1:11-

cr-00038 (M.D. Pa.), and United States v. Palmer, 1:09-cr-00209 (M.D. Pa.).  The legal authority

relied on by Defendant Staten – and by the defendants in Bishop and Palmer – is difficult to

ascertain but seems to be related to a theory that can be broadly referred to as the "redemption"

theory, which the United States District Court for the Eastern District of Pennsylvania has

described as follows:

> "Redemption" is an anti-government scheme that utilizes commercial
> law to harass and terrorize its targets.  It is increasingly popular
> among prison populations.  This theory advocates that an individual
> can "redeem" himself through the filing of commercial documents.
> According to the theory, the convict has a split personality: a real
> person and a fictional person called a "strawman."  The strawman
> came into being when the United States went off the gold standard in
> 1933 and pledged its citizens as collateral for its national debt.
> Proponents of the theory believe that the government only has power
> over the strawman and not the real person.  The real person, however,
> can "redeem" the fictional person by filing a [Uniform Commercial
> Code] financing statement.  This allows the real person to acquire an
> interest in the fictional person that trumps the government's power.
> Redemption theorists believe that the government must pay the real
> persons millions of dollars to use the strawman's name or keep him
> in custody.  If the official refuses to pay, the real person can file a
> lien.  The official is encouraged to release the convict from custody
> to avoid this situation.

Monroe v. Beard, No. 05-cv-04937, 2007 WL 2359833, at *2 (E.D. Pa. Aug. 16, 2007); see also

Monroe v. Beard, 536 F.3d 198, 203 n.4 (3d Cir. 2008).

     Courts across the United States have uniformly rejected arguments based on the

redemption theory or substantially similar theories.  See United States v. Ornelas, No. 05-cr-

0321, 2010 WL 4663385, at *1 (S.D. Ala. Nov. 9, 2010) ("Prisoners have sporadically attempted

to foist such frivolous, irrational, unintelligible UCC-related arguments on federal district courts for years.  Such efforts . . . have uniformly been rejected in summary fashion . . . ."); Luster v. United States, No. 03-cr-52, 2010 WL 3927786, at *2 (M.D. Ga. Apr. 12, 2010)  ("Petitioner's references to the Uniform Commercial Code and commercial transactions provided no relief from his criminal conviction and sentence for bank robbery to which he pleaded guilty."); Black v. Florida, No. 09-cv-30, 2009 WL 1605410, at *3 (N.D. Fla. 2009) ("Petitioner's use of language from the Uniform Commercial Code, inapplicable to criminal proceedings, is . . . unavailing."); United States v. Mitchell, 405 F. Supp. 2d 602, 604 (D. Md. 2005) ("[T]he U.C.C. has no bearing on criminal subject matter jurisdiction.").

The Court desires to make the following issues clear: First, this is a federal criminal action, not a proceeding in admiralty or commercial law.[4]  Second, the Uniform Commercial Code and legal concepts such as fidelity bonds, bid bonds, Miller Act bonds, and fiduciary trustees do not apply in a federal criminal action.  See, e.g., United States v. Holloway, 11 F. App'x 398, 400 (6th Cir. 2001).  Third, the undersigned is not the "probate" or "probating" Defendant Staten's estate; these matters have no relevance to this action.  Fourth, trial in this matter will pertain only to the criminal charges identified in the superseding indictment.

In consideration of the meritless nature of the requests in Defendant Staten's letters, the Court must deny all the requests contained therein.  Defendant Staten cannot avoid the potential penalties of the criminal charges of which he has been charged by appointing a fiduciary trustee

---

[4] Admiralty and maritime jurisdiction pertain only to marine commerce and navigation. See, e.g., Sisson v. Ruby, 497 U.S. 358, 362, 364 (1990) (noting that "protecting commercial shipping is at the heart of admiralty jurisdiction" and that "the party seeking to invoke maritime jurisdiction must show a substantial relationship between the activity giving rise to the incident and traditional maritime activity.").

or filing pro se letters in which he makes requests for oaths of office, registered assessments, or

the completion of W-9 or 1099 forms.  There is absolutely no legal authority that supports these

requests.  Defendant Staten is strongly cautioned to cease filing documents with the Court

containing these or similar requests.  Further submissions of this kind will be summarily stricken

as baseless acts of harassment and manipulative tactics that the Court will no longer tolerate.

## III.    DEFENDANT STATEN'S PRO SE STATUS

Next, the Court will address the consequences of Defendant Staten's decision to proceed

pro se at trial.  As noted, the Court held three hearings to address Defendant Staten's desire to

proceed pro se.  At the February 3, 2012 hearing, Defendant Staten initially expressed a desire to

represent himself.  The Court, upon finding that there was no good cause to remove Attorney

Rice and appoint replacement counsel, began to conduct an on-the-record colloquy with

Defendant Staten to ensure that his waiver of the right to counsel was knowing, voluntary, and

intelligent:

> THE COURT: Mr. Staten, before you go, you have the opportunity
> to proceed either with Mr. Rice as your lawyer or without a lawyer,
> what we call pro se, representing yourself.  Which course do you
> want to follow?
>
> THE DEFENDANT: I'm going to represent myself.
>
> THE COURT: Okay.  There are a number of things that I need to ask
> you if you're going to represent yourself in this matter.
>
> Do you understand by proceeding pro se, or representing yourself,
> you would waive your constitutional right to an attorney at every
> stage of this proceeding?  Knowing this, is that how you want to
> proceed?
>
> THE DEFENDANT: Yes.
>
> THE COURT: All right.  It's going to take awhile then, Mr. Staten,

but I have a number of other things that I'm legally required to ask you.  If you don't understand one of the questions I must ask you, please ask me for clarification.

First of all, some of the answers to the questions I already know, but I need to make a record.  Do you read, write, and converse in English?

THE DEFENDANT: Yes.

THE COURT: Have you ever been treated for drug or alcohol addiction or mental illness?

THE DEFENDANT: No.

THE COURT: Have you had any drugs or alcohol today, or are you taking any prescription medication?

THE DEFENDANT: No.

THE COURT: What is your educational background?

THE DEFENDANT: Graduated from high school.

THE COURT: Have you ever studied law?

THE DEFENDANT: No.

THE COURT: Have you ever represented yourself in a criminal proceeding?

THE DEFENDANT: No.

THE COURT: Do you understand that the superseding indictment in this case charges you with the following crimes:

First of all, in Count 1 of the indictment, you're charged with intentionally and knowingly manufacturing, distributing, and possessing with the intent to manufacture and distribute at least 280 grams of crack cocaine, a Schedule II controlled substance, all in violation of 21 U.S.C. Section 841(a)(1).

In Count 2, you're charged with conspiracy to commit offenses described in the Controlled Substances Act, including agreement to

manufacture, distribute, and possess with intent to manufacture and distribute at least 280 grams of crack cocaine, all in violation of [21] U.S.C. Section 846.  Do you understand the charges against you?

THE DEFENDANT: Yes.

THE COURT: Do you understand that the United States Sentencing Commission has issued sentencing guidelines that will be used in determining your sentence if you are, in fact, found guilty of these charges?

THE DEFENDANT: Yes.

THE COURT: Do you understand that if you are convicted of the crime charged in Count 1, you're subject to a mandatory minimum term of imprisonment of ten years?  The statutory maximum term, in any event, is life in prison.

You're also subject to a mandatory five-year term of supervised release following imprisonment, and you may be subject to a maximum fine of up to $8 million, though there is no mandatory minimum fine.

If you have a prior felony drug offense, the sentence will increase.  The term "felony drug offense" means an offense that is punishable by imprisonment for more than one year under any federal, state, or foreign law that prohibits or restricts conduct relating to narcotic drugs, marijuana, anabolic steroids, or depressant or stimulant substances.

If you have one prior felony conviction for a drug offense that had become final at the time of the charged offense conduct, the mandatory minimum term of imprisonment is 20 years and the statutory maximum is life.  You would also be subject to a mandatory ten-year term of supervised release following imprisonment, and you could be subject to a maximum fine of $16 million.

If you have two or more prior convictions for felony drug offenses that have become final at the time of the charged offense conduct, a mandatory sentence of life in prison without release is required, in addition to a maximum fine of up to $16 million.

If you're convicted under Count 2, you are subject to a mandatory minimum term of ten years' imprisonment.  The statutory maximum

term, in any event, is life in prison.  You're also subject to a mandatory five-year term of supervised release following imprisonment, and you may be subject to a maximum fine of up to $8 million.  There is no mandatory minimum fine.

As with Count 1, if you have a prior felony drug offense, the sentence will increase under these counts.  If you have committed one prior felony drug offense that has become final at the time of the charged offense conduct, you are subject to a statutory maximum imprisonment of up to 60 years, a term of supervised release of six years, and a fine of up to $4 million.  Do you understand these penalties?

THE DEFENDANT: Yes.

THE COURT: Do you understand that if you are found guilty under more than one of these counts, this Court can order that the sentences be served consecutively, that is, one after another?  Do you understand that you could be sentenced consecutively?

THE DEFENDANT: Yes.

THE COURT: Do you understand that if you represent yourself, you're on your own?  I cannot tell you or even advise you as to how you should try your case.  Do you understand that?

THE DEFENDANT: Yes, I understand.

THE COURT: Do you know what defenses there might be to the offenses with which you are charged?

THE DEFENDANT: Yes.

THE COURT: Do you understand that an attorney may be aware of ways of defending against these charges that may not occur to you since you have no legal training?

THE DEFENDANT: Yeah, I understand.

THE COURT: Do you understand that I cannot give you any advice on these matters?

THE DEFENDANT: Yes, I understand.

THE COURT: Are you familiar with the Federal Rules of Evidence?

THE DEFENDANT: No.

THE COURT: Do you understand that the Federal Rules of Evidence govern what evidence may or may not be introduced at trial and that in representing yourself, you would be required to abide by those rules?  In other words, the rules would apply to you if you represent yourself –

THE DEFENDANT: I understand what you're saying.  I'm just so astonished that that even exists.  I understand, though, I do.

THE COURT: Okay.  Are you familiar with the Federal Rules of Criminal Procedure?

THE DEFENDANT: Not all of them.

THE COURT: Do you understand that as with the Federal Rules of Evidence, these rules govern the way in which a criminal action is tried in federal court and that you would be required, just like any lawyer, to follow these rules?

THE DEFENDANT: Judge Kane, I just want to take that back.  I'd rather go with an attorney.  I don't understand all this stuff.  It's just too difficult, and I'm sorry that I took you through this process, but just let him stay on as my attorney.  Could you?  And let him just deal with all that.  If I lose, I just – I don't know, just come back on appeal, I guess.

THE COURT: Mr. Rice, are you able and willing to go forward?

MR. RICE: As I indicated previously, I am.  I'm just hoping that he's willing to meet with me and treat me with respect.  That's all that I ask.

THE COURT: Mr. Staten, I believe that Mr. Rice could provide you with a vigorous defense in this case.  He's a good lawyer, and he's a good advocate.

THE DEFENDANT: All right.

THE COURT: Counsel, we'll see you on March 5th.

11

Despite Defendant Staten's last representation to the Court at the February 3, 2012 hearing, it has become entirely clear that Defendant Staten is not willing to cooperate with Attorney Rice.  Defendant Staten refused to meet with Attorney Rice after he traveled to the Adams County Adult Correctional Complex to discuss trial preparation, prompting Attorney Rice to file another motion to continue trial.  (Doc. No. 176.)  Further, Defendant Staten expressed great dissatisfaction with Attorney Rice at the March 2, 2012 hearing, at which he stated: "He's a smurf and being paid out of my exemption to represent me, but he's an assistant for [the prosecutor].  He does not wish to help me at all, and I don't want him."  (Doc. No. 222 at 9.)  Thereafter, Defendant Staten has sent several letters to the Court, indicating a clear belief that he is now proceeding pro se in this action.  (See Doc. No. 223 at 1-2 ("I want to assume the position as pro-se counselor" and "I wish to go pro-se at any of my upcoming hears"); Doc. No. 224 at 2 ("Now that I am considered as pro-se counsel by the courts . . . ."); Doc. No. 226 at 7 ("The judge may consider [Attorney Rice] as my counsel, but I don't . . . and I never will.  At all other court proceedings, [Attorney Rice] wont be representing me, as long as I have a right to represent myself.").)

Further, at the June 14, 2012 hearing, Defendant Staten explicitly stated more than once that he wanted to proceed pro se at trial.  During this hearing, Defendant Staten was highly agitated, contemptuous, and unwilling to engage in a meaningful discussion with the undersigned.  Although it was abundantly clear that Defendant Staten was not willing to participate in another on-the-record colloquy, the undersigned attempted to conduct the colloquy several times.  Defendant Staten then became even more agitated, spoke over the undersigned, and demanded to be excused.  Accordingly, the undersigned concluded the hearing and relieved

Attorney Rice of his obligation to represent Defendant Staten in light of Defendant Staten's refusal to cooperate with him as well as the disparaging statements Defendant Staten made about him in his May 22, 2012 letter.

Defendant Staten's decision to proceed pro se at trial is a serious one.  The Court writes to inform Defendant Staten that by waiving his Sixth Amendment right to counsel, he faces the following consequences:

First, in defending against the charges against him, he is on his own.  The Court cannot tell – or even advise – him as to how he should try his case.

Second, an attorney may be aware of ways of defending against these charges that may not occur to Defendant Staten since Defendant Staten is not a lawyer.

Third, the Court cannot give Defendant Staten any advice on these matters.

Fourth, the Federal Rules of Evidence govern what evidence may or may not be introduced at trial.  By representing himself, Defendant Staten must abide by those rules.

Fifth, the Federal Rules of Criminal Procedure govern the way a criminal action is tried in federal court.  Defendant Staten must abide by those rules.

Sixth, Defendant Staten must proceed at trial by calling witnesses and asking them questions.  Except when, and if, Defendant Staten testifies, Defendant Staten will not be permitted to tell the jury matters that he wishes them to consider as evidence.

Seventh, it may be much easier for an attorney to contact potential witnesses, gather evidence, and question witnesses than it may be for Defendant Staten.

Eighth, in the Court's view, a trained lawyer would defend Defendant Staten far better than he could defend himself.  It is unwise of Defendant Staten to try to represent himself.  He is

13

not familiar with the law.  He is not familiar with court procedure.  He is not familiar with the Rules of Evidence.

Moreover, the Court writes to inform Defendant Staten of the crimes of which he has been charged and the sentencing guidelines, issued by the U.S. Sentencing Commission, that will be used in determining Defendant Staten's sentence if he is found guilty.

Count I of the superseding indictment charges that Defendant Staten "did intentionally and knowingly unlawfully manufacture, distribute and possess with the intent to manufacture and distribute at least 280 grams of a mixture and substance containing a detectable amount of cocaine base, also known as 'crack' cocaine, a Schedule II controlled substance" in violation of 21 U.S.C. § 841(a)(1).  If Defendant Staten is convicted of the crime charged in Count I, he is subject to a mandatory minimum term of imprisonment of ten years.  The statutory maximum term, in any event, is life in prison.  He is also subject to a mandatory five-year term of supervised release following imprisonment, and he may be subject to a maximum fine of up to $8 million, though there is no mandatory minimum fine.

Count II of the superseding indictment charges that Defendant Staten "did intentionally and knowingly unlawfully combine, conspire, confederate and agree with [his co-defendants], and with persons both known and unknown to the grand jury, to manufacture, distribute and possess with the intent to manufacture and distribute at least 280 grams of a mixture and substance containing a detectable amount of cocaine base, also known as crack cocaine, a Schedule II controlled substance" in violation of 21 U.S.C. § 846(a).  If Defendant Staten is convicted of the crime charged in Count II, he is subject to a mandatory minimum term of imprisonment of ten years.  The statutory maximum term, in any event, is life imprisonment.  He

14

is also subject to a mandatory ten-year term of supervised release following imprisonment, and he may be subject to a maximum fine of up to $8 million.  There is no mandatory minimum fine.

On February 29, 2012, the Government filed an Information to establish prior convictions pursuant to 21 U.S.C. § 851.  (Doc. No. 178.)  This filing places Defendant Staten on notice that if he is convicted under Count I and/or Count II, the Government will seek an enhanced sentence based on his prior felony drug offenses.  The term "felony drug offense" means an offense that is punishable by imprisonment for more than one year under any federal, state, or foreign law that prohibits or restricts conduct relating to narcotic drugs, marijuana, anabolic steroids, or depressant or stimulant substances.  One prior conviction for a felony drug offense that has become final at the time of the charged offense conduct results in a mandatory minimum term of imprisonment of twenty years, a statutory maximum term of life imprisonment, a mandatory ten-year term of supervised release following imprisonment, and a maximum fine of $16 million. Two or more prior convictions for a felony drug offense that has become final at the time of the charged offense conduct results in a mandatory sentence of life imprisonment without release in addition to a maximum fine of $16 million.  According to the Government, Defendant Staten has two prior felony drug convictions: The first stems from a conviction and sentence for possession with intent to distribute cocaine in the Superior Court of Warren County, New Jersey, in 1989, and the second stems from a conviction for possession with intent to distribute cocaine in the Court of Common Pleas of Franklin County, Pennsylvania, in 1997.

If Defendant Staten is found guilty under more than one of the Counts of the superseding indictment, the Court can order that the sentences be served consecutively, that is, one after another.

15

**IV.      CONCLUSION**

Defendant Staten has knowingly and voluntarily expressed a desire to proceed pro se at trial.  He clearly and unequivocally asserted his desire to represent himself at the March 2, 2012 and June 14, 2012 hearings as well as in written filings.  Further, at the February 3, 2012 hearing, he stated that he understood the nature of the charges against him, the range of punishments to which he may be subject, the potential defenses available to him, and the technical difficulties that proceeding pro se may impose.  The Court has also outlined all of this information in this order to ensure that Defendant Staten understands the consequences of electing to proceed pro se at trial.  Finally, the Court has referred Defendant Staten for a competency evaluation, and he has been found competent to stand trial.  In light of his refusal to cooperate with Attorney Rice and there being no good cause to appoint replacement counsel, Defendant Staten will proceed pro se at trial.

Although the Court has relieved Attorney Rice of his obligation to represent Defendant Staten at trial, Attorney Rice has expressed a willingness to serve as standby counsel at trial. Standby counsel "must be available if and when the accused needs help," "must be ready to step in if the accused wishes to terminate his own representation," may "explain and enforce the basic rules of courtroom protocol to the accused," and serves to "overcome routine obstacles that may hinder effective pro se representation."  United States v. Bertoli, 994 F.2d 1002, 1019 (3d Cir. 1993); see also United States v. Jones, 452 F.2d 223, 230 n.5 (3d Cir. 2006) ("We have expressly approved arrangements in which standby counsel advises a pro se defendant, makes opening or closing statements, and questions the defendant if he testifies in his own defense.").  Defendant Staten is not required to utilize standby counsel's services, but the Court is willing to appoint

16

Attorney Rice as standby counsel for Defendant Staten.  Because Defendant Staten has

expressed such great dissatisfaction with Attorney Rice, the Court will only appoint Attorney

Rice as standby counsel if Defendant Staten indicates to the Court that he assents to the

appointment.

**ACCORDINGLY**, on this 25th  day of June 2012, **IT IS HEREBY ORDERED THAT**:

1.     Jury selection in the above-captioned action is rescheduled to August 6, 2012, at
       1:30 p.m. in Courtroom No. 4, Federal Building, Third and Walnut Streets,
       Harrisburg, Pennsylvania;

2.     The Court specifically finds under 18 U.S.C. § 3161(h)(7) that the ends of justice
       served by granting this continuance outweigh the interests of the public and
       Defendant;

3.     The Clerk of Court shall exclude the appropriate time in the above-captioned
       action pursuant to the Speedy Trial Act (18 U.S.C. § 3161(h)(7)(A), (B)(I) and
       (iv)) and this order; and

4.     Standby counsel will be appointed for Defendant Staten only if he assents to such
       appointment in a filing submitted to the Court.

S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania

17